UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS EX REL. ) <br> KEN ELDER, ) <br> ) <br> Plaintiff-relator ) <br> ) <br> v. ) <br> ) <br> JPMORGAN CHASE BANK, N.A., ) <br> ) <br> Defendant. ) | No. 21 C 85 <br><br> Judge Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

Plaintiff-relator Ken Elder ("Elder"), troubled that defendant had escheated to the State of Ohio intangible property that he believes was subject to escheat in Illinois, filed in the Circuit Court of Cook County a complaint asserting claims under the Illinois False Claims Act. Defendant removed the case here, and relator filed a motion to remand. For the reasons set forth below, the motion is denied.

**I.     BACKGROUND**

In this case, relator takes issue with the way defendant JPMorgan Chase Bank, N.A. ("JPMC") escheats uncashed cashier's checks. Escheat is the "ancient" procedure "whereby a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Texas v. New Jersey*, 379 U.S. 674, 675 (1965).

Relator alleges that JPMC has bank branches in Illinois and at least thirty other states, including Ohio, where it maintains its main office. Specifically, JPMC has 4,900 branches, of which 335 are in Illinois. At those branches, relator alleges, customers may purchase cashier's checks. When a customer purchases a cashier's check, JPMC keeps a record of the identity of the purchaser and the branch location. Because JPMC sells cashier's checks only to account

holders, it also possesses a last-known address for those purchasers. To the extent the purchaser bought the cashier's check for his or her own benefit, JPMC has the last known address of the owner.

On November 5, 2020, relator filed in the Circuit Court of Cook County a second amended complaint in which he alleged that defendant violated the Illinois False Claims Act in three ways. First, relator asserts that defendant violated 740 ILCS § 175/3(a)(1)(D) by "knowingly maintain[ing] wrongful possession and the benefit of money used or to be used by the state government and knowingly deliver[ing] less than all of that money or property to the State of Illinois." (Complt. ¶ 68/Docket 1-1). Second, relator asserts that defendant violated 740 ILCS § 175/3(a)(1)(D) by "knowingly ma[king], us[ing], or caus[ing] to be made or used, false reports to the State of Illinois" with respect to defendant's "obligation to pay or transmit money to the state government." (Complt. ¶ 69). Finally, relator asserts that defendant violated 740 ILCS § 175/3(a)(1)(G) by "knowingly concealing" and "improperly avoid[ing] or decreas[ing] its obligation to pay or transmit money to the state government." (Complt. ¶ 70).

Relator alleges JPMC's "escheatment obligations to the States in which it does business derive from—and are determined by—both state and federal law." (Complt. ¶ 12). Specifically, relator alleges that "[f]ederal common law and a federal statute, 12 U.S.C. § 2503, establish priorities for determining which of several possible states is entitled to escheat abandoned property held by an entity that does business in multiple states or holds property owned by out-of-state individuals." (Complt. ¶ 12). Relator alleges JPMC "knowingly failed to comply with applicable federal law, 12 U.S.C. §2503, which provides that unclaimed cashier's checks escheat, in the first instance, to the State in which they were purchased." (Complt. ¶ 5). Relator alleges that "the [Illinois Uniform Unclaimed Property Act]—in combination with 12 U.S.C. §

2

2503—currently provides that all cashier's checks purchased in Illinois that remain uncashed and outstanding three years after issuance shall escheat to the State of Illinois." (Complt. ¶ 20).

Relator alleges that JPMC has, since 2014, taken the position that all of its uncashed cashier's checks, no matter where they were purchased, are subject to Ohio's escheatment rules. Relator believes that JPMC prefers Ohio law, because: (1) Ohio requires that only 10% of the value of the property be escheated to Ohio, such that JPMC can keep the remainder; and (2) Ohio does not consider cashier's checks to be abandoned until five years have passed.

Relator alleges that, as of June 30, 2018, JPMC was liable on 1,933 cashier's checks, with a value of more than $3.2 million, that had remained uncashed for five years. Relator alleges that "[p]ursuant to the UPA and 12 U.S.C. § 2503(1), defendant JPM was required to pay the amounts owing on these checks" to Illinois, "along with a report identifying all such checks." (Complt. ¶ 35). Relator alleges JPMC failed to send the money to Illinois and "filed one or more false reports with the Treasurer." (Complt. ¶ 36). Relator further alleges defendant engaged in similar conduct for the years 2014-2019. Relator believes that JPMC failed to deliver to Illinois "at least $20 million" over that five-year period. (Complt. ¶ 4).

On January 6, 2021, defendant filed a notice of removal. Before the Court is relator's motion to remand.

**II.     DISCUSSION**

Plaintiff-relator moves to remand on the grounds that the notice of removal was filed too late and that the Court lacks jurisdiction.

**A.     The notice of removal was timely filed.**

Relator first argues that defendant did not file the notice of removal on time. He notes that, on November 19, 2020, his attorney sent to defendant a courtesy copy of the second

3

amended complaint he had filed in the Circuit Court of Cook County. Relator argues that defendant filed the notice of removal "47 days after receiving" the second amended complaint, i.e., more than thirty days after defendant received a copy of the complaint. (Plf. Brief at 13/Docket 12 at 18).

> Section 1446(b) states that the:
>
> notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . .

28 U.S.C. § 1446(b) (emphasis added). Based on the words "through service *or otherwise*," one might suppose the courtesy copy defendant received from plaintiff's counsel would be enough to start the 30-day removal clock running. The Supreme Court, however, has rejected that notion, holding:

> a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, "through service or otherwise," *after* and apart from service of the summons, *but not by mere receipt of the complaint unattended by any formal service.*

*Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (emphasis added).

Here, relator sent a copy of the complaint unaccompanied by summons. Relator admits he did not serve summons on defendant, stating he "*expected* to serve a Summons and the [third amended complaint] on [defendant] (either formally or through acceptance of service) after the state court approved the [third amended complaint's] filing." (Plf. Brief at 13/Docket 12 at 18) (emphasis added). Nor does relator point to any event that (a) could have started the removal clock and (b) occurred more than thirty days before defendant filed its notice of removal.

4

This is a case in which the removal clock did not start to run before defendant removed the case. *Cf. Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 821 (7th Cir. 2013) ("Because the removal clock never started to run, the district court properly denied the motion to remand."). Defendant's notice of removal was timely, and the Court will not remand on that basis.

### B. The Court has subject-matter jurisdiction.

Next, relator argues that the Court must remand for lack of subject-matter jurisdiction. Defendant, as the removing party, "bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). Defendant must show jurisdiction was present at the time of removal. *Hukic v. Aurora Loan Services*, 588 F.3d 420, 427 (7th Cir. 2009) (courts "analyze [their] jurisdiction at the time of removal, as that is when the case first appears in federal court").

Generally (aside from exceptions—such as the forum-defendant rule—that do not apply here), "any civil action brought in a State court of which the district courts of the United States have *original jurisdiction*, may be removed . . ." 28 U.S.C. § 1441(a) (emphasis added). District courts have original jurisdiction over cases that arise under federal law. 28 U.S.C. § 1331 ("The district courts shall have *original jurisdiction* of all civil actions arising under the Constitution, laws, or treaties of the United States.") (emphasis added).

Although relator mentions federal law of escheatment repeatedly in his complaint, his claims are state-law claims under the Illinois False Claims Act. Relator says he mentions federal law only in anticipation of defendant's preemption defense. A case "may not be removed to federal court on the basis of a federal defense." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust Fund of So. Cal.*, 463 U.S. 1, 14 (1983). Nonetheless, a case arises under federal law such that federal jurisdiction will lie if:

5

>a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

*Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-314 (2005)); *see also Sarauer v. International Assoc. of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661 (7th Cir. 2020).

The Court agrees with defendant that relator's claims necessarily raise a federal issue. To understand why, one must understand a few things about escheat. The Supreme Court has held that "the Due Process Clause of the Fourteenth Amendment prevents more than one State from escheating a given item of property[.]" *Texas*, 379 U.S. at 676. Thus, the Supreme Court has occasionally, as part of its original jurisdiction (28 U.S.C. § 1251(a)) decided which state may escheat certain property.

In *Texas*, the Supreme Court explained that, with respect to tangible property, "only the State in which the property is located may escheat." 379 U.S. at 677. Intangible property is more difficult, because it has no physical presence in any state. The Supreme Court said:

>Since the States separately are without constitutional power to provide a rule to settle this interstate controversy and since there is no applicable federal statute, it becomes our responsibility in the exercise of our original jurisdiction to adopt a rule which will settle the question, of which State will be allowed to escheat this intangible property.

*Texas*, 379 U.S. at 677. The common-law rule the Supreme Court chose is that intangible property "is subject to escheat only by the State of the last known address of the creditor, as shown by the debtor's books and records." *Texas*, 379 U.S. at 682. The Supreme Court added that if there is no last-known address or the last-known address is in a state that does not provide for escheat, then "the State of corporate domicile could escheat the property." *Texas*, 379 U.S. at 682. The Supreme Court reiterated these rules in *Delaware v. New York*, 507 U.S. 490 (1993).

6

Congress, too, has passed a statute addressing escheat of certain intangible property. Congress was concerned that "the books and records of banking and financial organizations and business associations engaged in issuing and selling money orders and traveler's checks do not, as a matter of business practice, show the last known addresses of purchasers of such instruments[.]" 12 U.S.C. § 2501(1). Accordingly, Congress set out rules for determining which State could escheat sums "payable on a money order, traveler's check, or other *similar written instrument* (other than a third party bank check) on which a banking or financial organization or a business is directly liable[.]" 12 U.S.C. § 2503 (emphasis added).

Relator, in this suit, asserts that a cashier's check constitutes a "similar written instrument," such that the escheat rules set out in 12 U.S.C. § 2503 apply to cashier's checks. Defendant believes cashier's checks do not fall within the language of 12 U.S.C. § 2503, such that the common law rules set out in *Texas* apply to cashier's checks.

This federal question is embedded in relator's claim under the Illinois False Claims Act and is necessarily raised. Relator lists a federal statute as a reason why defendant owes money to the State of Illinois. (Complt. ¶ 35) ("Pursuant to the UPA and 12 U.S.C. § 2503(1), defendant JPM was required to pay the amounts owing on these checks" to Illinois, "along with a report identifying all such checks."). Relator believes the federal issue is merely a preemption defense, and if the State of Illinois had filed a claim against JPMC under the Illinois Uniform Unclaimed Property Act, then the Court would likely agree that the federal issue would be merely a defense to the claim. *See, e.g., Texas v. ClubCorp Holdings, Inc.*, Case No. 19-cv-171, 2019 WL 5704436 (W.D. Texas Nov. 5, 2019). In that situation, it would be incumbent upon defendant to establish that the federal rules preempted the Illinois Uniform Unclaimed Property Act. That is not, however, this case.

7

Here, relator makes claims under the Illinois False Claims Act, and those claims are dependent upon federal law. Relator claims defendant "knowingly" avoided an "obligation" to pay (allegedly in violation of 740 ILCS 175/3(a)(1)(G), Complt ¶ 70) and specifically alleges that the obligation defendant knowingly avoided is based on federal law. (Complt. ¶ 5) (defendant "knowingly failed to comply with applicable federal law, 12 U.S.C. §2503, which provides that unclaimed cashier's checks escheat, in the first instance, to the State in which they were purchased"). Relator also alleges defendant "knowingly . . . made . . . a false record or statement material to an obligation to pay" Illinois. 740 ILCS § 175/3(a)(1)(G). Specifically, relator alleges defendant made a false report to Illinois when it failed to report the cashier's checks relator believes should have been subject to escheat in Illinois, rather than Ohio. (Complt. ¶ 33). To prevail on his claim, relator must establish those reports were false. Those reports, however, could have been false *only* if relator is correct that the property was subject to escheat in Illinois, rather than Ohio, i.e., that cashier's checks are, as relator asserts, "similar written instruments" under 12 U.S.C. § 2503. That is something relator must establish to prevail on his claim under 740 ILCS § 175/3(a)(1)(G). A federal question is necessarily raised by relator's claims.

That federal question is also actually disputed. It is, as in *Gunn*, the "central point of the dispute." *Gunn*, 568 U.S. at 259.

The federal question is also substantial. To be substantial, it is not enough that an issue is important to the parties. *Gunn*, 568 U.S. at 260. Rather, it must be important "to the federal system as a whole." *Gunn*, 568 U.S. at 260. An issue is substantial if, for example, the issue is important to federal policy, *Sarauer*, 966 F.3d at 674, or if, "[i]n the aggregate," cases involving the issue could affect the success of a federal policy, *Evergreen Square of Cudahy v. Wisconsin*

8

*HUD*, 776 F.3d 463, 468 (7th Cir. 2015). Relator alleges defendant escheated to Ohio intangible property that should have been subject to escheat in Illinois. The question of whether a second State may escheat given intangible property is a substantial federal issue of constitutional importance, because it is a Due Process violation for more than one State to escheat the same property. Both Congress and the Supreme Court have attempted to set out clear rules on this issue, and, as in *Evergreen*, "the federal government has a strong interest in these issues being decided according to uniform principles." *Evergreen*, 776 F.3d at 468; *see also Delaware*, 507 U.S. at 510 ("To craft different rules for the novel facts of each case would generate 'so much uncertainty and threaten so much expensive litigation that the States might find they would lose more in litigation expenses than they might gain in escheats.'") (quoting *Texas*, 379 U.S. at 679). The issue is a substantial one.

Finally, the Court agrees with defendant that the federal issue can be resolved without disturbing the federal-state balance. In *Grable*, the Supreme Court concluded that resolving a federal tax issue in a state-law suit to quiet title would not upset the balance, "because it will be the rare state title case that raises a contested matter of federal law[.]" *Grable*, 545 U.S. at 315. The same is true here. Although relator brings suit under the Illinois False Claims Act, it will be the rare False Claims Act case that involves a question of federal law. *See New York ex. rel. Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016) ("Nor will federal jurisdiction here affect more than a tiny fraction of state false-claims actions, as it is the rare such action that hinges on a proper interpretation of federal tax law."). The Court notes, too, that the State of Illinois did not wish to pursue this case, which suggests there is little risk of federal-state imbalance here.

The Court concludes that this case arises under federal law and was properly removed.

### III. CONCLUSION

For the reasons set forth above, the Court denies relator's motion [10] to remand. Defendant's deadline to answer or otherwise plead is September 3, 2021.

**SO ORDERED.**                                    **ENTERED: August 3, 2021**

**HON. JORGE ALONSO**
**United States District Judge**