UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF ILLINOIS EX REL. | ) | |
| KEN ELDER, | ) | |
| | ) | No. 21 C 85 |
| Plaintiff-relator | ) | |
| | ) | Judge Jorge L. Alonso |
| v. | ) | |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff-relator Ken Elder ("Elder"), troubled that defendant had escheated to the State of Ohio intangible property that he believes was subject to escheat in Illinois, filed in the Circuit Court of Cook County a complaint asserting claims under the Illinois False Claims Act. Defendant removed the case, after which relator filed a third amended complaint. Before the Court is defendant's motion to dismiss. For the reasons set forth below, the motion is granted.

**I.      BACKGROUND**

In this case, relator takes issue with the way defendant JPMorgan Chase Bank, N.A. ("JPMC") escheats uncashed cashier's checks. Escheat is the "ancient" procedure "whereby a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Texas v. New Jersey*, 379 U.S. 674, 675 (1965). Relator asserts that certain cashier's checks were subject to escheat in Illinois but that, instead, JPMC treated those cashier's checks as being subject to escheat in Ohio.

Relator alleges that JPMC, at its branch locations, allows customers to purchase cashier's checks. When a customer purchases a cashier's check, JPMC keeps a record of the identity of the purchaser and the branch location. Because JPMC sells cashier's checks only to account

holders, it also possesses a last-known address for those purchasers. Relator alleges that, to the extent the purchaser bought the cashier's check for his or her own benefit, JPMC has the last known address of the owner.

Relator alleges that defendant's escheatment practices violated two sections of the Illinois Revised Uniform Unclaimed Property Act. Specifically, relator alleges defendant "knowingly failed to comply with both UPA § 306 and § 302(1)." (3rd Am. Complt. ¶ 19). Relator further alleges that the "provisions of the UPA pertaining to escheatment of cashier's checks are fully consistent with federal law, which governs the escheatment priorities for intangible property among the States." (3rd Am. Complt. ¶ 18). Relator alleges that "[p]ursuant to federal *statutory* law, as established by 12 U.S.C. § 2501, *et seq.*, a State is authorized to escheat cashier's checks when the holder's records show that the abandoned check was purchased in that State." (3rd Am. Complt. ¶ 18 at p. 5).

Relator alleges that JPMC has, since 2014, taken the position that all of its uncashed cashier's checks, no matter where they were purchased, are subject to Ohio's escheatment rules. Relator believes that JPMC prefers Ohio law, because: (1) Ohio requires that only 10% of the value of the property be escheated to Ohio, such that JPMC can keep the remainder; and (2) Ohio does not consider cashier's checks to be abandoned until five years have passed.

Relator alleges that, as of June 30, 2018, JPMC was liable on 1,933 cashier's checks, with a value of more than $3.2 million, that had remained uncashed for five years. Relator alleges that, as of June 30, 2020, JPMC was liable on 1,999 cashier's checks with a value of more than $4.5 million, that had remained uncashed for five years. Relator alleges that defendant JPMC was required to pay the amounts owing on these checks" to Illinois, "along with a report identifying all such checks." (3rd Am. Complt. ¶ 29). Relator alleges JPMC failed to

send the money to Illinois and "filed one or more false reports with the Treasurer." (3rd Am. Complt. ¶¶ 30, 33). Relator further alleges defendant engaged in similar conduct for the years 2014-2019. Relator believes that JPMC failed to deliver to Illinois "at least $20 million" over that five-year period. (3rd Am. Complt. ¶ 4).

Based on these allegations, relator seeks relief under the Illinois False Claims Act. In Count I, relator asserts that defendant violated 740 ILCS § 175/3(a)(1)(D) by "knowingly maintain[ing] wrongful possession and the benefit of money used or to be used by the state government and knowingly deliver[ing] less than all of that money or property to the State of Illinois." (3rd Am. Complt. ¶¶ 3, 66). In Count II, relator asserts that defendant violated 740 ILCS § 175/3(a)(1)(G) by: (a) "knowingly ma[king], us[ing], or caus[ing] to be made or used, false reports to the State of Illinois" with respect to defendant's "obligation to pay or transmit money to the state government" (3rd Am. Complt. ¶¶ 3, 70); and (b) "knowingly concealing" and "improperly avoid[ing] or decreas[ing] its obligation to pay or transmit money to the state government" (3rd Am. Complt. ¶¶ 3, 70).

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the "circumstances constituting fraud" must be alleged with particularity. Fed.R.Civ.P. 9(b). "[C]laims [that] arise under the [False Claims Act], an anti-fraud statute, . . . are subject to the heightened pleading requirements of Rule 9(b)," which requires a plaintiff to describe the "'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). The "more rigorous pleading standard guards against 'the stigmatic injury that potentially results from allegations of fraud.'" *United States ex rel. Mamalakis v. Anesthetix Mgt., LLC*, 20 F.4th 295, 301 (7th Cir. 2021). It also "'forces the plaintiff to conduct a careful pretrial investigation' to minimize the risk of damage associated with a baseless claim." *Berkowitz*, 896 F.3d at 840. The difficulty a

relator might have in accurately alleging "what occurs inside" a separate company, "does not

relieve [a relator] of his obligation to adequately plead all of the elements of an FCA claim or to

fully investigate his claim before filing a complaint." *Berkowitz*, 896 F.3d at 843.

## III. DISCUSSION

### A. Jurisdiction

Every federal court has an obligation to ensure that it has jurisdiction over the cases

before it. *Scott Air Force Base Prop., LLC v. County of St. Clair Ill.*, 548 F.3d 516, 520 (7th Cir.

2008). Defendant removed this case on the basis of federal-question jurisdiction. Relator moved

for remand, and this Court denied the motion. In so doing, the Court, applying *Gunn v. Minton*,

568 U.S. 251, 258 (2013), concluded that relator's case arose under federal law, because a

federal issue was: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of

resolution in federal court without disrupting the federal-state balance approved by Congress.

After this Court denied the motion for remand, relator filed a third amended complaint in

which he declined to include most of his prior mentions of federal law. Relator's complaint still

alleges:

> The provisions of the [Illinois Revised Uniform Unclaimed Property Act]
> pertaining to escheatment of cashier's checks are fully consistent with *federal
> law, which governs* the escheatment priorities for intangible property among the
> states.

(3rd Am. Complt. ¶ 18 at p. 5) (emphasis added).[1] The admission that federal law governs is

probably enough to establish that a federal issue is necessarily raised by the Third Amended

Complaint. The Illinois statute on which relator bases his claims confirms it. Relator asserts that

---

[1] The Seventh Circuit has explained that Unclaimed Property Acts, technically, are "not escheat statutes" because the "state does not acquire title to the property. It is merely a custodian. The owner can reclaim his property at any time." *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999).

defendant violated section 15-306 of the Illinois Revised Uniform Unclaimed Property Act, which states that Illinois "may take custody of sums payable on a traveler's check, money order, or similar instrument presumed abandoned *to the extent permissible under 12 U.S.C. Sections 2501 through 2503, as amended*." 765 ILCS 1026/15-306 (emphasis added). One cannot determine whether section 15-306 is violated without reference to federal law, namely 12 U.S.C. § 2503.

In any case, relator's removal from his third amended complaint of references to federal law does not require remand. As the Seventh Circuit has explained:

> a plaintiff's abandoning his federal claim . . . ordinarily requires dismissal of the entire case, including the supplemental claims, and not just their relinquishment, for there is no longer a federal hook on which to hang them. But if the case has been removed to federal court and the defendant opposes the remand, as in this case, dismissal is no longer mandatory—that is the 'forum manipulation' exception recognized in *Rockwell International*, see 549 U.S. at 474 n. 6, 127 S.Ct. 1397. For then it is a case not just of the plaintiff's abandoning his federal claims but of his seeking to deprive the defendant of the opportunity to defend the remaining claims in the court that obtained jurisdiction of the case on the defendant's initiative. That is called pulling the rug out from under your adversary's feet.

*Townsquare Media, Inc. v. Brill*, 652 F.3d 767, 773 (7th Cir. 2011) (internal citations omitted).

With jurisdiction secure, the Court considers the merits of the motion to dismiss.

**B.    Motion to dismiss**

As a federal court considering this case under diversity jurisdiction, this Court's job is to predict how the Illinois Supreme Court would decide the legal issues. *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) ("As a federal court sitting in diversity jurisdiction, our task is to predict how the Illinois Supreme Court would decide issues presented here."); *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the

content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question.").

As the Seventh Circuit has noted, "the Illinois False Claims Act applies the same standards as the federal statute." *United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739 (7th Cir. 2021); *see also Bellevue v. Universal Health Serv. of Hartgrove, Inc.*, 867 F.3d 712, 716 n. 2 (7th Cir. 2017) ("The ICFA 'closely mirrors the FCA,' and to date we have not found any difference between the statutes that is material to a jurisdictional or merits analysis."). Accordingly, this Court will presumptively apply the federal standards (except where a party points out a difference between federal and state law).

Relator's theory is that defendant violated the Illinois False Claims Act by failing to follow Illinois rules for the escheatment of abandoned property and then filing false reports on the subject. Specifically, relator asserts that defendant failed to follow Illinois law with respect to escheatment of cashier's checks.

The Supreme Court has held that "the Due Process Clause of the Fourteenth Amendment prevents more than one State from escheating a given item of property[.]" *Texas*, 379 U.S. at 676. Thus, the Supreme Court has occasionally, as part of its original jurisdiction (28 U.S.C. § 1251(a)) decided which state may escheat certain property.

In *Texas*, the Supreme Court explained that, with respect to tangible property, such as houses and cars, "only the State in which the property is located may escheat." 379 U.S. at 677. Intangible property is more difficult, because it has no physical presence in any state. The Supreme Court said:

> Since the States separately are without constitutional power to provide a rule to
> settle this interstate controversy and since there is no applicable federal statute, it
> becomes our responsibility in the exercise of our original jurisdiction to adopt a

> rule which will settle the question, of which State will be allowed to escheat this
> intangible property.

*Texas*, 379 U.S. at 677. The common-law rule the Supreme Court chose is that intangible

property "is subject to escheat only by the State of the last known address of the creditor, as

shown by the debtor's books and records." *Texas*, 379 U.S. at 682. The Supreme Court added

that if there is no last-known address or the last-known address is in a state that does not provide

for escheat, then "the State of corporate domicile could escheat the property." *Texas*, 379 U.S. at

682. (The Supreme Court reiterated these rules in *Delaware v. New York*, 507 U.S. 490 (1993).)

Congress, subsequently, passed a statute addressing escheat of certain intangible

property. Congress was concerned that "the books and records of banking and financial

organizations and business associations engaged in issuing and selling money orders and

traveler's checks do not, as a matter of business practice, show the last known addresses of

purchasers of such instruments[.]" 12 U.S.C. § 2501(1). Accordingly, Congress set out rules for

determining which State could escheat sums "payable on a money order, traveler's check, or

other *similar written instrument* (other than a third party bank check) on which a banking or

financial organization or a business is directly liable[.]" 12 U.S.C. § 2503 (emphasis added).

This case involves escheatment of intangible property, namely cashier's checks. Relator

asserts that defendant, with respect to escheatment of cashier's checks, violated two sections—

15-306 and 15-302—of the Illinois Revised Uniform Unclaimed Property Act. Section 15-306

of that Act states that Illinois "may take custody of sums payable on a traveler's check, money

order, or similar instrument presumed abandoned to the extent permissible under 12 U.S.C.

Sections 2501 through 2503, as amended." 765 ILCS 1026/15-306. Relator contends that a

cashier's check constitutes a "similar written instrument," such that the escheat rules set out in 12

U.S.C. § 2503 apply to cashier's checks. Defendant believes cashier's checks do not fall within

the "similar written instrument" language of 12 U.S.C. § 2503, such that the common law rules set out in *Texas* apply to cashier's checks. Relator also asserts that defendant violated section 15-302 of the Illinois Revised Uniform Unclaimed Property Act, which states that the Administrator "may take custody of property" if "the last-known address of the apparent owner in the records of the holder is in this State." 765 ILCS 1026/15-302.

### 1. Inconsistent pleading

Defendant argues that relator's complaint asserts inconsistent claims and that such inconsistency warrants dismissal. Specifically, defendant argues that relator contradicts himself by alleging both 15-306 and 15-302 apply to cashier's checks. The Court agrees.

Relator first asserts that section 15-306 applies. If 15-306 applies, then the cashier's checks would escheat *exclusively* to the state where purchased. That is so, because section 15-306 states that Illinois "may take custody of sums payable on a traveler's check, money order, or similar instrument presumed abandoned *to the extent permissible under 12 U.S.C. Sections 2501 through 2503*, as amended." 765 ILCS 1026/15-306 (emphasis added). Section 2503, in turn, states that:

> if the books and records of such banking or financial organization or business association show the State in which such money order, traveler's check, or similar written instrument was purchased, that State shall be entitled *exclusively* to escheat or take custody of the sum payable on such instrument.

12 U.S.C. § 2503(1) (emphasis added). Relator alleges that defendant has the records showing the state of purchase. (3rd Am. Complt. ¶¶ 21-22). Thus, by alleging that § 15-306 applies to cashier's checks, relator is alleging that cashier's checks escheat exclusively to the state of purchase. Each piece of abandoned property can escheat only once, so the cashier's checks could not also escheat to the state of the apparent owner's last-known address, which might be in another state. Section 15-302, thus, cannot also apply.

9

Relator argues in a footnote that he is allowed to plead claims in the alternative. That is true to a point, but a plaintiff must do so explicitly and in a permissible way. *See Cohen v. American Sec. Ins. Co.* 735 F.3d 601, 615 (7th Cir. 2013). In *Cohen*, the Seventh Circuit explained how a plaintiff could permissibly allege two inconsistent claims (breach of contract and unjust enrichment) in the alternative. It said:

> But the inconsistent-pleading option in this context is limited. A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense. That is not what [plaintiff] is alleging here. She acknowledges throughout that there is an express contract. She claims [defendant] is liable for breaching this express contract but that if it did not breach the contract, then it owes damages for unjust enriching itself. This manner of pleading unjust enrichment is impermissible[.]

*Cohen*, 735 F.3d at 615. Here, relator could permissibly allege: (1) § 15-306 applies and defendant failed to comply; and (2) if § 15-306 does not apply, then § 15-302 applies and defendant failed to comply. Relator has not done so. Instead, relator borrows snippets of each section and combines them into one super-rule that relator alleges applies. (3rd Am. Complt. ¶ 15) ("The UPA currently provides that all cashier's checks issued by a financial organization that were (a) purchased (or otherwise issued) in Illinois or (b) as to which the last known address of the owner is either shown by the holder's records or determined by or otherwise known to the holder to be in the State of Illinois that remain uncashed and outstanding three years after issuance shall escheat to the State of Illinois. UPA . . . §§ 15-306, 302(1)[.]"). That is not a permissible way to plead these claims in the alternative.

Accordingly, relator's claims based on section 15-302 are dismissed, but the defect is curable. That leaves relator's theory that defendant failed to comply with § 15-306.

### 2. Rule 9(b)

Next, defendant argues that relator has failed to allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Pursuant to Rule 9(b), the "circumstances constituting fraud" must be alleged with particularity. Fed.R.Civ.P. 9(b). "[C]laims [that] arise under the FCA, an anti-fraud statute, . . . are subject to the heightened pleading requirements of Rule 9(b)," which requires a plaintiff to describe the "'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Berkowitz*, 896 F.3d at 839 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). Alleging "fraud 'on information and belief' is normally insufficient to satisfy Rule 9(b)'s heightened pleading standard." *Mamalakis*, 20 F.4th at 301. Likewise, "generalized allegations" are "insufficient under Rule 9(b)." *Malamakis*, 20 F.4th at 301-2.

Here, relator knows from the Illinois Revised Uniform Unclaimed Property Act that Illinois requires reports on abandoned property to be filed (*see* 765 ILCS 1026/15-401) by November 1 of each year (*see* 765 ILCS 1026/15-403). Relator, therefore, assumes defendant filed such reports. Relator alleges:

> executives in defendant JPM's abandoned property business function have caused defendant JPM, on or about October 31, of each year from 2014 through 2020 (and likely in prior years as well), to file knowingly false abandoned property reports with the Treasurer that intentionally failed to list JPM's abandoned cashier's checks subject to escheatment to the State of Illinois each year and falsely verified that the reports were complete and accurate.

(3rd Am. Complt. ¶ 48). We know relator merely *assumes* the reports were filed, because the relator openly admits the reports "are not publicly available to relator." (3rd Am. Complt. ¶ 48). Relator, accordingly, cannot know what those reports actually said. Nonetheless, relator alleges the reports were false in that they failed to report the cashier's checks that relator claims were subject to escheat in Illinois. Relator has included the who, what and when.

11

This is sufficient detail to comply with Rule 9(b), despite the fact that the allegations might not be true and that the relator may never be able to prove them. In *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), the relator's complaint, like Elder's, merely assumed that a particular certificate that allegedly contained the false statement "*must have been submitted*[.]" *Lusby*, 570 F.3d at 854. The Seventh Circuit held that such an allegation sufficed to make the fraud claim plausible, noting that "[t]o say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement)." *Lusby*, 570 F.3d at 855. Relator has alleged the who, what, when of the false statement. Whether he can prove it is a question for another day.

### 3. Scienter

Each of relator's counts requires allegations of scienter, i.e., a knowing violation. Defendant argues that relator has failed to allege scienter plausibly. The Court agrees.

Relator seeks relief under 740 ILCS 175/3(a)(1)(D) & (G). Under 740 ILCS 175/3(a)(1)(D), a person is liable if he "has possession, custody, or control of property or money used, or to be used, by the States and *knowingly* delivers, or causes to be delivered, less than all the money or property. 740 ILCS 175/3(a)(1)(D) (emphasis added). Under 740 ILCS 175/3(a)(1)(G), a person is liable if he "*knowingly* makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, *or knowingly* and improperly avoids or decreases an obligation to pay or transmit money or property to the state." 740 ILCS 175/3(a)(1)(G). The Illinois False Claims Act goes on to define knowingly to: (A) mean that a person, with respect to information: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B)

requires no proof of specific intent to defraud." 740 ILCS 175/3(b)(1). That is exactly how the federal False Claims Act defines knowingly. 31 U.S.C. § 3729(b)(1). This scienter requirement "balances the severity of [the FCA] penalties by carefully circumscribing liability[.]" *United States ex rel. Schutte v. Supervalu Inc.*, 9 F.4th 455, 463 (7th Cir. 2021).

Thus, in order to state a claim, relator must allege with sufficient particularity that defendant acted knowingly. *See, e.g., Berkowitz*, 896 F.3d at 841 ("[A] plaintiff must sufficiently plead the essential elements of an FCA claim. We must therefore consider whether the third amended complaint states, with sufficient particularity, the facts necessary to demonstrate that the defendants knowingly made false statements . . ."). Relator's theory is that defendant knew it was violating § 15-306 of the Illinois Revised Uniform Unclaimed Property Act (i.e., that defendant knew a cashier's check is a 'similar instrument' under 12 U.S.C. § 2503) when it filed reports and failed to escheat abandoned cashier's checks to Illinois.

Pleading scienter in this context requires allegations that defendant acted with reckless disregard, which, in turn requires allegations that authoritative guidance cautioned defendant away from its interpretation that cashier's checks are not "similar instruments" within the meaning of § 2503. That is so, because, in *Schutte*, the Seventh Circuit held that the scienter standard outlined by the Supreme Court in *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) applies to claims under the False Claims Act. *Schutte*, 9 F.4th at 468 ("When relators cannot establish the standard articulated in *Safeco*, there is no liability under the FCA."); *see also United States ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649, 658 (7th Cir. 2022) ("[I]f a relator cannot show that a defendant acted with reckless disregard under *Safeco*, then the FCA claim fails, regardless of whether the relator can point to evidence of the defendant's subjective awareness that its interpretation might be wrong.").

13

Under that standard, a defendant "does not act with reckless disregard . . . as long as its interpretation of the relevant statute or regulation was 'objectively reasonable' and no 'authoritative guidance' counseled against that interpretation." *Proctor*, 30 F.4th at 658 (quoting *Safeco*, 551 U.S. at 70 & n. 20). A "defendant's subjective intent does not matter for [a] scienter analysis—the inquiry is an objective one." *Schutte*, 9 F.4th at 470. It is a "question of law" because "it hinges on the text of the statute or regulation." *Schutte*, 9 F.4th at 468.

The Court agrees that the statutory text is ambiguous as to whether cashier's checks fall within the phrase "other similar instrument" in 12 U.S.C. § 2503 ("[w]here any sum is payable on a money order, traveler's check, or *other similar instrument* (other than a third party bank check) on which a banking or financial organization or a business association is directly liable …") (emphasis added). The question of what instruments fall within the meaning of "other similar instrument" is before the Supreme Court this coming term. Specifically, within the Supreme Court's original jurisdiction is a case in which Delaware (on one side) and thirty other states (on the other) are debating whether Moneygram Official Checks (including agent checks and teller's checks) fall within the meaning of "other similar instrument." The Supreme Court appointed a special master, who issued a report in which he explained:

> The logical inference from Congress's use of 'other similar instrument' is that, while Congress was not aware of any such similar instrument, it wanted to ensure that if, by reason of future changes in State laws or business practices, or for any reason, such similar instruments came into existence in the future, they would be governed by the terms of the statute. If Congress had known of such similar instruments, it would have had every reason to name them explicitly, rather than rely on a vague invocation of similarity.

(First Interim Report of the Special Master at p. 52).[2]  In this case, defendant argues cashier's checks were in common usage before Congress passed 12 U.S.C. § 2503, which suggests a cashier's check is not a "similar written instrument" within the meaning of § 2503.  Delaware, too, in objecting to the special master's first interim report (it is the objections to the report that are before the Supreme Court this coming term) makes nearly the same argument.  (Delaware's Exceptions to the Report of the Special Master at p. 44) ("If Congress had wanted to include well-known financial products—such as cashier's checks, certified checks, and the bank's own checks—within the scope of the FDA, it would have referred to those products by name.  At the time of the FDA's passage, those products were considered distinct financial products from both money orders and traveler's checks, and they were typically used by different consumers for different purposes.").  These arguments demonstrate the ambiguity of the phrase "other similar instrument."  The Court agrees that defendant's position is not foreclosed by the plain language of the statute.

Because the phrase is ambiguous, the Court agrees that relator must allege the existence of authoritative guidance in order to allege scienter plausibly.  Authoritative guidance "must come from a governmental source—either circuit court precedent or guidance from the relevant agency."  *Schutte*, 9 F.4th at 471; *Proctor*, 30 F.4th at 660 ("we may only consider binding precedent from courts of appeals or appropriate guidance from the relevant agency").  Relator includes no such allegations in his third amended complaint (and he identifies no such guidance

---

[2] These documents are available at the Supreme Court's website as part of its original case number 22O145 and 22O146.

in his brief).  Accordingly, relator has not stated a claim under the Illinois False Claims Act based on violation of § 15-306.[3]  The defect may be curable.

### 4.    Notice from Treasurer

Defendant next argues that relator's claims under the Illinois False Claims Act must be dismissed, because relator has not alleged that Illinois's Treasurer gave defendant notice. Defendant cites no authority for the proposition, and the Court does not find the argument compelling.

Defendant's argument seems to stem from § 15-1201 of the Illinois Revised Uniform Unclaimed Property Act, which allows Illinois's administrator to "commence an action" to "secure payment or delivery of past due, unpaid, or undelivered property."  765 ILCS 1026/15-1201(a).  In addition, an "administrator may require the holder" to "pay the administrator" additional penalties (*see* 765 ILCS 1026/15-1205(a), 765 ILCS 1026/15-1204(b)) under certain circumstances.  As defendant points out, in order for the administrator to commence an action to secure delivery of the property, it must first "issue a determination of the putative holder's liability to pay or deliver *and give notice* in a record *to the putative holder* of the determination." 765 ILCS 1026/15-1011 (emphasis added).

Based on the procedures the administrator must follow to obtain the undelivered property, defendant argues that a relator, in order to state a claim under the Illinois False Claims Act, must allege that the administrator followed the required procedures.  Specifically, defendant

---

[3] Relator, citing *People ex rel. Schad, Diamond & Sheddon P.C. v. My Pillow, Inc.*, 82 N.E.3d 627 (Ill. App. Ct. First Dist. 2017), argues that Illinois law with respect to pleading scienter is different.  This Court disagrees.  In *My Pillow*, the Illinois Appellate Court took the standard from federal courts.  *My Pillow*, 82 N.E.3d at 636-637.  This Court predicts that the Illinois Supreme Court would look to the federal standard, as outlined recently in *Schutte* and *Proctor*, much as it looked to the federal standard in *Scachitti v. UBS Financial Services*, 215 Ill.2d 484, 506-507 (Ill. 2005).

argues relator must allege the administrator sent defendant the notice required by 765 ILCS 1026/15-1011.

The problem with defendant's argument is that this relator is not attempting to state a claim under the Illinois Revised Uniform Unclaimed Property Act, which does not provide a private right of action. Relator is attempting to state a claim under the Illinois False Claims Act. Under the Illinois False Claims Act, a person can be liable "for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the State sustains because of the act of that person." 740 ILCS 175/3(G). Such damages do not include the unclaimed property itself. Under the Illinois Revised Uniform Unclaimed Property Act, the state does not take title to the unclaimed property sent to it by banks under the Act. Rather, the state's administrator:

> holds property as custodian for owner. Upon the payment or delivery of abandoned property to the administrator, the State shall assume custody and shall be responsible for the safekeeping thereof.

765 ILCS 1026/15-804. Thus, a state's damages under the Illinois False Claims Act would not be the value of the property that should have been sent to the state under the Illinois Revised Uniform Unclaimed Property Act but rather the value of the *use* of that money less the expense of keeping it safe and making it available to the rightful owner. The Court fails to see why a relator seeking only the relief available under the Illinois False Claims Act would need, in order to state a claim under that Act, to allege that the administrator had jumped through the hoops the administrator would have needed to jump through had the administrator attempted to seek the underlying property itself.

Here, though, relator seeks relief beyond what the Court just described. Relator also seeks the penalties the administrator might have obtained by sending notice and filing suit.

Defendant may be correct that relator cannot obtain under the Illinois False Claims Act the property or penalties the administrator might have obtained had it taken the actions outlined in the Illinois Revised Uniform Unclaimed Property Act. Defendant has not, however, asked the Court to strike the relator's prayer for that relief, so the Court need not decide that issue now. The lack of allegations about the Treasurer's actions, however, does not prevent relator from stating a claim under the Illinois False Claims Act for the relief allowed under the IFCA.

### 5. Indispensible party

So far, the defects in relator's claims are potentially curable (though perhaps not within the bounds of Rule 11). Defendant, however, also makes arguments that, if accepted, might bar relator's claims entirely, thereby rendering amendment futile.

For example, defendant argues that relator's claims should be dismissed pursuant to Rule 19 of the Federal Rules of Civil Procedure, because, according to defendant, Ohio is an indispensable party that cannot be joined. The Court disagrees.

Defendant fears "Ohio's absence from this litigation 'leaves JPMC 'subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.'" (Def. Brief at 15/Docket 53 at 23). Defendant, thus, bases its argument on Rule 19(a)(1)(B)(ii). That Rule provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> * * *
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> * * *
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a).[4]  Defendant's problem with this argument is that, on the next page of its brief, defendant admits, "Ohio must indemnify JPMC for 'all liabilities for any claim arising out of the transfer of [escheated] funds to state.'  Ohio Rev. Code § 169.07(a) & (b)."  (Def. Brief at 16/Docket 53 at 24).  Defendant's admission that Ohio would be required to indemnify defendant makes it impossible for defendant to demonstrate it is subject to a substantial risk of double or multiple obligations, as required by Rule 19(a)(1)(B)(ii).  Defendant has, thus, failed to convince the Court that the requirements of Rule 19(a) are met.  Defendant has not shown that Ohio is an indispensable party.

### 6.  Public-disclosure bar

Finally, defendant argues that this case should be dismissed based on the public-disclosure bar.  The purpose of the public-disclosure bar (which was once jurisdictional but has been amended to require dismissal) is "to prevent parasitic lawsuits by 'opportunistic plaintiffs who have no significant information to contribute of their own.'"  *Bellevue*, 867 F.3d at 716 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294 (2010)).

The Illinois False Claims Act states:

The court shall dismiss an action or claim under this Section, unless opposed by the State, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed:

(i) in a criminal, civil, or administrative hearing in which the State or its agent is a party;
(ii)  in a State legislative, State Auditor General, or other State report, hearing, audit, or investigation; or
(iii)  from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

---

[4] Defendant does not argue that Ohio is a necessary party pursuant to Rule 19(a)(1)(B)(i).

740 ILCS 175/4(e)(4).  On the question of whether public disclosure bars a suit, the "relator bears the burden."  *Bellevue*, 867 F.3d at 718.

Defendant argues that the alleged fraud was disclosed in three ways.  First, defendant argues the alleged fraud was disclosed by the very reports which defendant, according to relator's allegations, filed with the state and in which defendant included the allegedly false statements.  The problem with this argument is that relator specifically alleged those reports were not publicly available.  (3rd Am. Complt. ¶ 48).  In addition, as relator points out, such reports do not fall within § 175/4(e)(4), which bars claims based on disclosures in "a State legislative, State Auditor General, or other State report, hearing, audit, or investigation."  740 ILCS § 175/4(e)(4).  The reports defendant cites are reports *to* the state, not "State reports" from the state.

Next, defendant attached to its motion a news article that defendant believes constitutes public disclosure of the alleged fraudulent practice.  The article stated, among other things:

> 'In cases where a payee of a cashier's check may be in possession of an original cashier's check, it is important to note that, if the check has not been presented for payment, the issuing bank is required to transfer the funds underlying the check *to the state associated with the last known address of the owner* of the instrument under that state's unclaimed property law.' said Wells Fargo spokesperson Heather Meyer.

> The length of time before a bank must turn the funds over to the state as unclaimed property is determined by each state, Meyer said.  Most states set the timeframe as three to five years.

> The process of transferring funds to a state as unclaimed property is called 'escheating.'

> '*If the bank does not know the address of the owner, the bank will escheat the funds associated with the cashier's check to the state in which the bank was established*,' Meyer said.  'Upon escheat, the issuing bank is no longer in possession of the funds.'

20

Shannon Mortland, spokesperson for PNC, which had no connection to any of this, concurred. 'The proceeds of official checks are subject to state escheatment laws,' she said. 'Once the proceeds of a check is escheated, the customer must request funds from the state.'

Third Federal Savings spokeswoman Jennifer Rose said Ohio considers a cashier's check dormant after five years. That's when banks in Ohio would turn the money over to the state.

(Docket 53-6 at 4-5) (emphasis added).

The relator objects that this news article did not disclose the facts underlying his claims, because the article did not refer to defendant specifically. That is not dispositive. Public "'disclosures bar *qui tam* actions against any defendant who is identifiable from the public disclosures,' even if not specifically named." *United States ex rel. Bogina v. Medline Industries, Inc.*, 809 F.3d 365, 368 (7th Cir. 2016) (citations omitted); *see also United States ex rel. Gear v. Emergency Med. Assoc. of Ill., Inc.*, 436 F.3d 726, 729 (7th Cir.2006) ("We are unpersuaded by an argument that for there to be public disclosure, the specific defendants named in the lawsuit must have been identified in the public records. The disclosures here were of industry-wide abuses and investigations."), *abrogated on other grounds by Canter v. AT&T Umbrella Benefits Plan No.3*, 33 F.4th 949, 959 (7th Cir. 2022) (*pro hac vice* fees not taxable under 28 U.S.C. § 1920). Here, the disclosure said banks without addresses escheat to their domiciles, and defendant is a bank. It would be different if the disclosure had been limited to only some banks. *See United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 867-68 (7th Cir. 2011) ("A statement such as 'half of all chiropractors' claims are bogus' does not reveal *which half*").

The dispositive issue is whether relator bases his claims on substantially the same allegations disclosed in the news article. The basis of relator's claim is that defendant escheats cashier's checks to Ohio, its domicile, after five years. Relator has two alternative theories on why this adds up to fraud. Theory one, that section 15-306 required defendant to escheat to the

place of purchase, requires relator to allege not only that defendant escheated to Ohio but also that defendant keeps records of the place where a cashier's check is purchased. The latter fact is not revealed by the news article. Theory two, that section 15-302 required defendant to escheat to the state of the last-known address, required allegations not only that defendant escheated to Ohio but also that defendant sold cashier's checks only to its customers such that it possessed a last-known address. That latter fact was not revealed by the news article.

Finally, defendant argues that the alleged fraud was revealed in articles discussing the Moneygram case. As relator points out, these articles discuss the practices of one entity, Moneygram. Defendant points to no portions of the articles that reveal relevant industry-wide practices, and the Court has not found any. The Court cannot agree that the Moneygram articles (alone or together with the other disclosures) constitute a public disclosure that would bar relator's claims.

The Court cannot say at this point that relator's claims are barred by public disclosure.

### III. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [52] to dismiss. The Court dismisses without prejudice relator's third amended complaint. Relator is granted 28 days in which to file a fourth amended complaint, should he so choose.

**SO ORDERED.**                                    **ENTERED: August 30, 2022**

                                                                        _____
                                                                        **HON. JORGE ALONSO**
                                                                        **United States District Judge**

22